## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION
## CIVIL ACTION NO. 1:15-CV-00151 HBB

**BRIEN D. SPROUSE**                                                                                                  **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                                                      **DEFENDANT**

### MEMORANDUM, OPINION AND ORDER

#### BACKGROUND

Before the Court is the complaint (DN 1) of Brien Sprouse ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 12) and Defendant (DN 17) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9).  By Order entered February 10, 2016 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.  No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Supplemental Security Income (SSI) benefits on July 17, 2014 (Tr. 172, 187). Plaintiff alleged that he became disabled on January 6, 2012 as a result of anxiety, depression, and mental and emotional instability (Tr. 191). Administrative Law Judge William C. Zuber ("ALJ") conducted a hearing on June 2, 2014 in Louisville, Kentucky. Plaintiff was present via video in Bowling Green, Kentucky and represented by Richard D. Burchett, Esq. Also present and testifying was vocational expert Linda Jones.

In a decision dated June 25, 2014, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 17). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 17, 2012, the application date (Tr. 22). At the second step, the ALJ determined that Plaintiff's degenerative disc disease of the cervical and lumbar spine, depression, anxiety, and obesity are "severe" impairments within the meaning of the regulations (Id.). Also at the second step, the ALJ determined that Plaintiff's foot and knee pain are "non-severe" impairments within the meaning of the regulations (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 23).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work (Tr. 24). More specifically, the ALJ found that Plaintiff can perform simple, unskilled, one or two step tasks that are non-fast paced or quota driven. Plaintiff requires a sit/stand option at thirty minute intervals throughout the workday. Plaintiff can only occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs. Plaintiff must avoid

exposure to dangerous machinery and unprotected heights. Plaintiff can have occasional interactions with supervisors and coworkers, but interactions with the general public should be limited. Finally, Plaintiff can concentrate for two-hour intervals (Tr. 24). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work (Tr. 28).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 29). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from July 17, 2012, through the date of the decision (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 14). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the

challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).  Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).  The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

4

416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. As previously noted, the ALJ determined that Plaintiff possessed the residual functional capacity to perform a restricted range of light work (Tr. 24). Occupations the expert listed as being within the limits of Plaintiff's residual functional capacity include hand bander, mail clerk, and checker (Tr. 57). The ALJ based his assessment on his review of the complete medical record as well as the testimony of the vocational expert. For the reasons set forth below, the undersigned concludes the ALJ's failure to ask the vocational expert about inconsistencies between her testimony and the

Dictionary of Occupational Titles (DOT) constitutes reversible error and remands this case for further proceedings consistent with this order.

A

Plaintiff first challenges Finding No. 4, arguing that the ALJ failed to adequately evaluate the opinion of consulting psychiatrist Dr. Crystal Sahner, Psy.D. (DN 12 at p. 2). As a general matter, the opinion of an examining physician is entitled to less weight than the opinion of a treating physician, and the opinion of a non-examining state agency physician is entitled to the least weight of all. 20 C.F.R. § 416.927(c)(1), (c)(2), and (e); Social Security Ruling 96-6p. In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Social Security Ruling 96-6p, 1996 WL 374180, at *2 (July 2, 1996). "For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." Id. For this reason the opinions of non-examining State agency psychological advisers can be given weight only to the extent they are supported by the evidence in the record. 20 C.F.R. § 416.927(f); Social Security Ruling 96-6p; see also Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989) (Opinions of a non-examining State agency psychological adviser that are consistent with the evidence of record represent substantial evidence to support the Administrative Law Judge's findings).

In assigning weight to non-treating sources, the regulations require the ALJ to consider certain factors, including "the examining relationship (or lack thereof), specialization,

6

consistency, and supportability . . . " Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2). The ALJ may also consider other factors which tend to support or contradict the consulting source's opinion. Id. at 376. Notably, Social Security Ruling 06-03p indicates not every factor in 20 C.F.R. § 416.927(c) will apply in every case. Rather, assessment of other source opinions will depend on the facts of the particular case, and each case should be adjudicated on its own merits based on a consideration of the probative value and a weighing of all the evidence in the record.

In her one-time evaluation of Plaintiff in October of 2012, Dr. Sahner opined that Plaintiff would suffer a marked limitation in his ability to tolerate the stress of a day-to-day employment situation on an ongoing basis (Tr. 325). Dr. Sahner also assigned Plaintiff a GAF score of 50, which is consistent with serious symptoms such as suicidal ideation, severe obsessive rituals, frequent shoplifting, or other severe social limitations (Tr. 26). But Dr. Sahner also found that Plaintiff could perform simple math, possessed a good memory, and was capable of understanding and carrying out simple instructions (Id., Tr. 324). In addition, Dr. Sahner described Plaintiff's ability to make simple decisions to be "adequate" and found Plaintiff's output of effort also to be adequate where he completed "all of the more complex tasks on the mental status correctly" (Tr. 324).

Moreover, Plaintiff's treating psychiatrist, Dr. Jeffrey Zellers, assessed Plaintiff's GAF score at 65, a score indicative of little to no symptomology, in January of 2013, fewer than three months after Dr. Sahner's much lower assessment (Tr. 333). Finally, Plaintiff's own testimony concerning his daily activities is inconsistent with Dr. Sahner's restrictive assessment. Plaintiff

7

testified that he takes care of his partially disabled mother, performs chores around the house, drives without difficulty, spends time with friends and family, and uses a computer (Tr. 48-51).

The ALJ discussed the above inconsistencies (Tr. 28). In addition, the ALJ noted that the Plaintiff has told his treating physicians that his medication was working well, and his history shows only conservative treatments for his psychiatric conditions (Tr. 27). The Plaintiff's claim that the ALJ failed to discuss all of the factors enumerated in 20 C.F.R. § 416.927(c)(2) is without merit. As mentioned above, each case requires individual attention, and the ALJ may not need to consider every factor in every case.

Plaintiff next offers the incredible claim that the ALJ's discussion of Plaintiff's daily activities, mentioned above, "have no evidentiary basis" (DN 12 at p. 7). This argument must fail, however, when the evidentiary basis for the claims was Plaintiff himself. At the hearing, Plaintiff and the ALJ engaged in the following exchange:

> Q: Okay. Do you do any chores around the house?
>
> A: A little, a few things. You know, I'll — my mom, you know, she's partly disabled, you know, so I'll prepare meals. We get somebody to cut the grass, and, you know, I just clean up around the house, you know, and do what I need to do.
>
> Q: Do you have anyone else doing stuff around the house other than just the person who mows the lawn?
>
> A: No, sir

(Tr. 48)

In addition, Plaintiff testified that he has no difficulty driving, that he does all of the housework, and that he runs all of the errands for himself and is mother (Tr. 49-50). Thus Plaintiff's claim that the evidentiary record does not support these facts is wholly without merit.

The Plaintiff further errs where he contends that it was reversible error for the ALJ to consider Plaintiff's attempts at work since the onset date of his alleged disability (DN 12 at pp. 7-8). The Plaintiff suggests that the ALJ used these instances of work activity in determining Plaintiff's residual functional capacity. But the ALJ's residual functional capacity finding is not consistent with any of the attempted jobs, and instead reflects a need for a greatly reduced workload. In other words, the ALJ agreed with the Plaintiff that he could not perform any of the jobs he attempted following the onset of his alleged disability. To the extent the ALJ discussed Plaintiff's attempts at work following his onset date, he did so only as a means of demonstrating that Plaintiff was more socially available than Dr. Sahner's report indicated (Tr. 28).

The undersigned concludes that the ALJ adequately addressed Dr. Sahner's opinion and thoroughly supported his decision to provide her opinion little weight. Therefore, the undersigned concludes that the ALJ's actions with respect to Dr. Sahner's opinion are supported by substantial evidence and comport with all applicable law.

B

Plaintiff next challenges the ALJ's decision at Finding No. 9, arguing the ALJ erred by failing to identify and resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT) (DN 12 at p. 10). Social Security Ruling 00-4p requires the ALJ to ask the vocational expert whether inconsistencies exist between the expert's testimony and the DOT. The Ruling explains that the purpose of this requirement is to ensure consistency between the vocational expert's testimony and the occupational requirements as described by the DOT. Id. If a conflict exists, the ALJ's responsibility is to determine whether

the expert's conflicting testimony is reasonable and offers a basis for relying on the expert rather than the DOT. Id.

Plaintiff relies on Teverbaugh v. Comm'r of Soc. Sec., 258 F.Supp.2d 702, 705 (E.D. Mich, 2003). Teverbaugh concerned a situation where the ALJ failed to inquire as to potential conflicts. Additionally, the expert did not provide job codes for any of the suggested occupations. Id. at 704. Because each job title contained multiple job codes, in one instance more than a hundred, the Plaintiff could not determine which jobs the ALJ and expert believed Plaintiff possessed the requisite residual functional capacity to perform. Id. Notably, upon inspection, the Plaintiff realized that some of the jobs suggested by the expert had corresponding codes in the DOT that did not reflect the range of activity the ALJ set forth in his assessment of plaintiff's residual functional capacity. Id. These patent inconsistencies and ambiguities, combined with the ALJ's failure to attempt to identify and resolve conflicts, were enough for the District Court to conclude the ALJ's decision was not supported by substantial evidence. Id. at 706.

The Plaintiff is correct that the Court in Teverbaugh stated that the ALJ's failure to carry its burden at this step has been found to constitute reversible error. Id. The authority cited in Teverbaugh makes it abundantly clear that an ALJ's failure to inquire into inconsistencies between expert testimony and the DOT constitutes reversible error when the Plaintiff identifies a conflict that the ALJ should have resolved. For instance, in Anschutz v. Barnhart, 202 F. Supp.2d 1077, 1085-86 (S.D. Iowa 2002) the Court found reversible error where the vocational expert did not reference the DOT at all, thereby failing to identify with specificity any jobs the Plaintiff could perform. In Steward v. Barnhart, 44 Fed. App'x 151, 153 (9th Cir. 2002)

(unpublished), the Court reversed because the expert offered jobs which required transferable skills, and the ALJ had previously determined that the Plaintiff possessed no transferable skills.

Although the Sixth Circuit Court of Appeals has not yet weighed in directly on the precise requirements of the affirmative duty set forth in SSR 00-4p, several published opinions from other circuits offer a glimpse into the trends affecting the ruling. The Third, Seventh, Eighth, Ninth, and Tenth Circuits have addressed this issue. A survey of these opinions reveals three trends, two of which strongly favor the Plaintiff in the current case, and a third which arguably does.

The Ninth Circuit considers the 00-4p inquiry to serve an indispensable function in ensuring that substantial evidence supports the ALJ's decision. In Massachi v. Astrue, 486 F.3d 1149 (9th Cir. 2011), the Court wrote:

> The procedural requirements of SSR 00–4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the Dictionary of Occupational Titles. In making disability determinations, the Social Security Administration relies primarily on the Dictionary of Occupational Titles for "information about the requirements of work in the national economy." The Social Security Administration also uses testimony from vocational experts to obtain occupational evidence. Although evidence provided by a vocational expert "generally should be consistent" with the Dictionary of Occupational Titles, "[n]either the [Dictionary of Occupational Titles ] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict." Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles.
>
> Here, the ALJ did not ask the vocational expert whether her testimony conflicted with the Dictionary of Occupational Titles and, if so, whether there was a reasonable explanation for the

> conflict. Thus, we cannot determine whether the ALJ properly relied on her testimony. As a result, we cannot determine whether substantial evidence supports the ALJ's step-five finding that Massachi could perform other work. Accordingly, we vacate in part the district court's summary judgment upholding the Commissioner's decision and instruct the district court to remand this case so that the ALJ can perform the appropriate inquiries under SSR 00–4p.

Id. at 1153-54 (internal citations omitted).

The Seventh Circuit echoed the Ninth Circuit when it addressed this issue in Prochaska v. Barnhart, 454 F.3d 731 (7th Cir. 2006). There, the ALJ failed to satisfy the requirements of 00-4p. Id. at 735-36. The government conceded the argument, but maintained that the omission resulted in harmless error. The Seventh Circuit held that the Plaintiff identified specific inconsistencies between the jobs cited by the vocational expert and the ALJ's residual functional capacity assessment. As a result, the reviewing court was in no position, based on the record, to resolve the inconsistencies and could not conclude that the decision was supported by substantial evidence. Id. The Tenth Circuit has adopted a similar view, holding that an ALJ's failure to inquire into inconsistencies constitutes reversible error when the Plaintiff identifies a conflict that a court cannot resolve based on the material in the record. Hackett v. Barnhart, 359 F.3d 1168, 1175 (10th Cir. 2005).

The Eighth Circuit's interpretation of SSR 00-4p is slightly softer than the reasoning employed by the Seventh, Ninth, and Tenth Circuits. In Jones v. Astrue, 619 F.3d 963, 978 (8th Cir. 2010), the Court acknowledged the ALJ's failure to inquire into any inconsistencies between the vocational expert's testimony and the DOT. Nonetheless, the Court held that, because the vocational expert expressly discussed how his assessment differed from the DOT, the ALJ did not need to inquire separately. The expert's stated limitations provided a "perfectly acceptable

basis for the Administrative Law Judge's conclusions." Id. (quoting Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995).

The Third Circuit offers by far the narrowest view of SSR 00-4p. In Rutherford v. Barnhart, 399 F.3d 546 (3rd Cir. 2005), the Third Circuit adopted the view that SSR 00-4p applies only to the portion of an expert's testimony that concerns the jobs a Plaintiff is still capable of performing. Id. at 557. Moreover, the Court held that, in instances where there was substantial evidence in the record to support the ALJ's determination at step five, the presence of unresolved inconsistencies that the ALJ failed to flush out would not constitute reversible error. Id.

The Court based its reasoning primarily on the fact that the Plaintiff had identified an inconsistency as to one job mentioned by the expert, but offered only minor inconsistencies with the remaining jobs. Id. at (558). Furthermore, the expert expressly stated that his suggested list of occupations was only a sampling of many jobs that would be available to a person with the Plaintiff's limitations. Id. But the Court suggested that, in cases where the expert does not stipulate that the offered list of occupations is non-exhaustive, and where a legitimate inconsistency exists as to each job the expert cites, the ALJ's failure to inquire into and resolve potential conflicts would likely constitute reversible error. Id. at 557-58.

Thus, the circuits have generally taken one of three approaches in this matter. The Seventh, Ninth, and Tenth Circuits have interpreted the failure to observe the requirements of SSR 00-4p to result in reversible error where a Plaintiff can demonstrate nearly any inconsistency. The Eighth Circuit has carved out an exception, forgiving the requirement when the expert acknowledges and justifies the inconsistencies in the course of his testimony. Finally,

the Third Circuit has taken the narrower view that, not only must a Plaintiff identify an inconsistency, but it must be a relatively impactful inconsistency and apply to all of the jobs mentioned by the expert.

Here, Plaintiff presents strong grounds for reversal under any of the three approaches. First, the ALJ failed to make the required inquiry. Second, the expert did not allude to any inconsistencies in her testimony that might excuse the ALJ's failure to inquire. And, most notably, the issue of whether the jobs referenced by the expert accommodate a sit/stand option presents a genuine inconsistency.

In his decision, the ALJ wrote:

> It is important to note, these numbers are consistent with the DOT, but due to her experience in the field, the impartial vocational expert took into account the sit/stand option and made the appropriate adjustments to the amount of available jobs. The numbers stated herein reflect those adjustments.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

(Tr. 29).

The undersigned cannot determine from where the ALJ drew this conclusion. Nowhere in the record does the ALJ ask the vocational expert whether this is true. And while past experience may provide a foundation for assuming as much, without express confirmation from the vocational expert while testifying at the administrative hearing, such a conclusion lacks any reliable factual basis.

The United States argues that the ALJ's failure to make the required inquiry amounts to harmless error (DN 17 at p. 7). The problem with this view is that neither the United States nor

the undersigned is in a position to make this determination. If the expert's testimony contemplated the sit/stand option, then the error would be harmless. But if it did not, it would result in a lack of substantial evidence.

It is not clear to the undersigned whether a hand bander, a checker, or a mail clerk could perform their duties with a sit/stand option because the DOT does not address this issue. It is also unclear whether the expert reduced the number of available jobs or performed any other adjustments to accommodate for a sit/stand option. These potential inconsistencies are exactly the kind contemplated by SSR 00-4p, and the undersigned is not in a position to resolve them. The ALJ should have made these determinations in the initial proceeding, and the Appeals Council should have identified and corrected the error. "We will defer to an ALJ's decision if it is supported by substantial evidence, but here there is an unresolved potential inconsistency in the evidence that should have been resolved." Prochaska, 454 F.3d at 736 (internal quotations omitted).

## CONCLUSION

The undersigned concludes that, because the ALJ did not inquire into possible inconsistencies between the vocational expert's testimony and the DOT as required by SSR 00-4p, the decision was not supported by substantial evidence.

## ORDER

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are not supported by substantial evidence, and it is ordered that the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

Copies:		Counsel